Case 4:94-cv-04204   Document 36   Filed on 04/19/96 in TXSD   Page 1 of 34

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

*36*

| | | |
|---|---|---|
| RICHARD M. FLEMING, M.D., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 94-CV-4204 |
| | § | |
| THE UNIVERSITY OF TEXAS | § | |
| HEALTH SCIENCE CENTER | § | |
| AT HOUSTON;  JAMES T. | § | |
| WILLERSON, M.D.;  HEINRICH | § | |
| TAEGTMEYER, M.D.;  GERALD | § | |
| V. NACCARELLI, M.D.; | § | |
| RICHARD W. SMALLING, M.D., | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM AND ORDER

Pending before the Court is Defendant's Motion for Summary Judgment (Docket Entry No. 20-1).[1]

After carefully considering the motion, the response, and the applicable law, the Court is of the opinion that Defendants' Motion for Summary Judgment be GRANTED for the reasons set forth below.

### I.   Factual Background

This case arises out of a dispute between Dr. Fleming (Plaintiff) and several of the faculty administrators (Defendants) overseeing the cardiology fellowship program at the University of Texas Health Science Center at Houston (UTHSC).

---

[1]   The parties consented to proceed before the undersigned magistrate judge for all proceedings, including trial and final judgment, pursuant to 28 U.S.C. § 636 (c) and FED. R. CIV. P. 73. (Docket Entry No. 7).

Dr. Fleming graduated from the honors internal medicine program at the University of Iowa Medical School in 1986.  From 1986 through 1989 he completed his internship and his internal medicine residency at the University of Iowa and Creighton University.  Dr. Fleming was recruited by UTHSC and several of the Defendants to join their prestigious cardiology program.

Dr. Fleming began his cardiology fellowship at the UTHSC at Houston in 1989.  Doctors who successfully complete this advanced training program achieve "board eligible" status, which permits them to take the national board certification exam in cardiology. According to Plaintiff, achieving "board eligible" status in cardiology is a significant achievement, with favorable consequences for professional status and future income.

Dr. Fleming satisfactorily completed the first year of his fellowship without incident.  However, during Fleming's second year, Defendants allege that they observed, and also began receiving reports from hospital staff, attending physicians, and other faculty members, of incidents in which Fleming used poor clinical judgment. In January, 1991, the members of the UTHSC cardiology fellowship supervisory committee (the four individual defendants named in this suit) met and decided to put Fleming on probation.

In July, 1991, the committee extended Fleming's probation through December, 1991.  Approximately five months later, the committee decided that Fleming's progress was still inadequate, resulting in the requirement that Fleming complete an additional year of clinical training.  Fleming alleges that on both occasions

2

he attempted to request a review of the committee's decision and to gain access to his file. Fleming alleges that on both occasions he was denied a hearing or access to his file.

At the end of the third year of his fellowship program, the committee refused to certify Fleming as "board eligible," and he subsequently left the fellowship program. Fleming later accepted an offer to practice cardiology at Medical Associates of Cedar Rapids (located in Cedar Rapids, Iowa) in the summer of 1992. When Fleming applied to obtain privileges to practice medicine at several hospitals in the Cedar Rapids area, the hospitals contacted UTHSC as part of their background checks of Dr. Fleming.

Fleming alleges that Defendants responded to the request for information from Mercy Hospital by rating him "inadequate" in the areas of "clinical judgment," "relationship with peers," "relationship with subordinates," and "availability and thoroughness in patient care." Defendants rated Fleming as "unsatisfactory" in the areas of "professional judgment," "sense of responsibility," "clinical competence," "cooperativeness, ability to work with others," "relationship with nursing and ancillary staff," and "relationship with physicians" on the St. Luke's Hospital evaluation form. Plaintiff asserts that, based on these ratings, he was unable to obtain privileges to practice medicine at several health care facilities, and that his contractual relationship with Medical Associates of Cedar Rapids was destroyed.

Fleming alleges that by putting him on probation, requiring him to take an additional year of training, and communicating these

3

facts and opinions to other physicians and institutions, the Defendants acted arbitrarily and capriciously in violation of his due process rights, breached their contract with him, tortiously interfered with his contract (with Medical Associates of Cedar Rapids), committed fraud against him, defamed him, intentionally inflicted emotional distress on him, and invaded his privacy.

## II. Summary Judgment Standard

Summary judgment is authorized if the movant establishes that there is no genuine dispute about any material fact and the law entitles it to judgment. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S. Ct. 2548, 2554 (1986). A party moving for summary judgment "'must demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovants's case." Little v. Liquid Air Corp., 37 F.3d 1069, 1075 (5th Cir. 1994)(en banc)(per curiam)(emphasis in original) quoting Celotex, 477 U.S. at 323, 106 S. Ct. at 2553-54. Applicable substantive law determines what factual issues are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986).

Federal Rule of Civil Procedure 56(c) sets forth the types of evidence which may be considered when reviewing a motion for summary judgment. That evidence includes pleadings, depositions, answers to interrogatories, admissions on file, and affidavits. Id. Evidence used by the nonmoving party to avoid summary judgment need not be in a form which would be admissible at trial. Celotex, 477 U.S. at 324, 106 S. Ct. at 2553. However, Rule 56(e) does require that

4

affidavits opposing summary judgment be made on personal knowledge and provide facts which would be admissible in evidence. FED. R. CIV. P. 56(e). Facts contained in affidavits which would not be admissible in evidence must be excluded from consideration for summary judgment purposes. Id.

When considering the evidence submitted in support and opposition to a motion for summary judgment, the Court must draw reasonable inferences from the underlying facts in favor of the nonmoving party. Anderson, 477 U.S. at 255, 106 S. Ct. at 2513. The nonmovant, however, may not rely on naked assertions of dispute, but must adduce admissible evidence creating a fact issue as to each essential element of the claim. Matter of Lewisville Properties, Inc., 849 F.2d 946, 950 (5th Cir. 1988). The nonmovant cannot discharge his burden by offering vague allegations and legal conclusions, Lujan v. National Wildlife Fed'n, 497 U.S. 871, 889, 110 S. Ct. 3177, 3189 (1990); Fontenot v. Upjohn Co., 780 F.2d 1190, 1195-96 (5th Cir. 1986), assertions unsupported by the facts, Hopper v. Frank, 16 F.3d 92, 98 (5th Cir. 1994), Williams v. Weber Management Serv., Inc., 839 F.2d 1039, 1041 (5th Cir. 1987)(per curiam), or by offering a mere scintilla of evidence in support of the essential elements of his claim, Anderson, 477 U.S. at 251, 106 S. Ct. at 2511; Davis v. Chevron, 14 F.3d 1082 (5th Cir. 1994).

### III. Due Process Claim Under the U.S. Constitution

Plaintiff claims a due process violation actionable under 42 U.S.C. §1983 when he was denied hearings on the decisions to place him on probation and to require a fourth year of training. He also

5

claims a violation of a liberty interest in his good name when the Defendants gave unfavorable references to several hospitals in Iowa.

The requirements of procedural due process apply only to the deprivation of interests encompassed by the fourteenth amendment protection of liberty and property.  <u>Board of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 569, 92 S. Ct. 2701, 2705 (1972). Defendants concede that their decisions concerning Fleming satisfy the state action requirement of §1983.

<u>1.  Property Interest</u>

Property interests are not created by the Constitution.  <u>Board of Regents of State Colleges v. Roth</u>, 408 U.S. 564, 577, 92 S. Ct. 2701, 2709 (1972).  Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source, such as state law.  <u>Id.</u>

Plaintiff claims a property interest was created by the Cardiology Department's handbook which indicated that the fellowship program was a three-year program.  Plaintiff argues that the Defendants' refusal to certify him for board eligibility at the end of the three years violated his property interest in a three-year program.

In order for a person to have a property interest within the ambit of the fourteenth amendment, he "must have more than an abstract need or desire for it.  He must have more than a unilateral expectation of it.  He must, instead, have a legitimate claim of entitlement to it."  <u>Board of Regents v. Roth</u>, 408 U.S. 564, 577 (1972).  Sufficiency of the claim of entitlement must be decided in

6

reference to state law.  <u>Perry v. Sindermann</u>, 408 U.S. 593, 599-601 (1972).

Plaintiff has put forward no legitimate, constitutionally protected claim of entitlement to board eligibility in three years, only his unilateral expectation that he would achieve board eligibility in three years.  In fact, Plaintiff's assertions are belied by his own summary judgment evidence.  The handbook for Post-Graduate Training in Cardiovascular Medicine stated, "The fellowship lasts for a minimum of three and a maximum of five years.  Three years of training are required by the American Board of Internal Medicine as a prerequisite to the Board's subspecialty examination."  Plaintiff's Response to Defendants' Motion for Summary Judgment, Ex. 5.  The handbook does not make any statement that a favorable recommendation by the faculty would follow the completion of a three-year fellowship.

The handbook further states, "Applicants are expected to have demonstrated special abilities in the course of their previous training and to show willingness to commit themselves to a rigorous educational experience."  The handbook excerpts attached as summary judgment evidence do not contain any language which would give rise to an entitlement of a favorable recommendation to the American Board of Internal Medicine after the passage of three years alone.[2]

Having found that Plaintiff had no property interest in

---

[2]In <u>University of Texas Medical School at Houston v. Than</u>, 901 S.W.2d 929, 930 fn. 1, (Tex. 1995) the court noted that in finding that plaintiff had a liberty interest in his graduate education, it was expressing no opinion on whether graduate students had a property interest in their education at state universities.

CHMPDF - www.fastio.com

obtaining a favorable recommendation for board eligibility in three years, no due process protection is implicated by the Defendants' extension of the Plaintiff's program for another year.

### 2. Liberty Interest

Fleming has alleged that Defendants' actions in placing him on probation and refusing to certify him as 'board eligible' have damaged his reputation, and thus have deprived him of a constitutionally-protected liberty interest. Fleming also alleges that Defendant's publication of his probation, the non-completion of the fellowship program, and less-than-favorable performance ratings given to several hospitals in Iowa and the American Board of Internal Medicine violated the same constitutionally-protected liberty interest.

As a threshold matter, damage to reputation alone is insufficient to infringe on a protected liberty interest. In <u>Paul v. Davis</u>, 424 U.S. 693, 710-11, (1976), the Court held that the infliction of a stigma on a person's reputation by a state official, without more, does not infringe on a protected liberty interest. "To establish a liberty interest sufficient to implicate fourteenth amendment safeguards, the individual must not only be stigmatized, but also stigmatized in connection with a denial of a right or status previously recognized under state law . . ." <u>Moore v. Otero</u>, 557 F.2d 435, 437-38 (5th Cir. 1977)(footnote omitted). The Fifth Circuit requires a plaintiff to show a stigma plus an infringement of some other interest. <u>San Jacinto Sav. & Loan v. Kacal</u>, 928 F.2d 697, 700 (5th Cir. 1991).

8

The damage to reputation is sufficient stigma only where the state actor has made concrete, false assertions of wrongdoing on the part of the plaintiff.  <u>Blackburn v. City of Marshall</u>, 42 F.3d 925, 936 (5th Cir. 1995).  To be stigmatizing, the statements published must be false, and must be worse than merely adverse; they must be such as would give rise to 'a "badge of infamy," public scorn, or the like.'  <u>Id.</u>  Fleming does not deny that he was placed on probation or that he left the cardiology fellowship program before being certified by the faculty as "board eligible."  Thus, these true statements made by Defendants do not rise to the level of a constitutionally-prohibited "stigma."

Fleming also takes issue with the ratings of his performance by Defendants provided to the Iowa hospitals, at their request.  However, even if the reasonable minds might disagree on the subjective performance ratings provided by Defendants, the ratings are not a 'false assertion of wrongdoing' against Fleming which rise to the level of a constitutionally-prohibited "stigma," they are merely a reflection of the opinion held by a defendant concerning a particular attribute of the plaintiff.

The court would also note that Fleming has not provided summary judgment evidence to establish that publishing his performance ratings would give rise to a "badge of infamy" or public scorn.  A statement or opinion that is merely adverse does not implicate a liberty interest.  <u>Blackburn</u>, 42 F.3d at 936.

Thus, the court concludes that Plaintiff has not shown that a constitutionally-protected liberty interest was implicated by the

unfavorable ratings by Defendants or by statements concerning the probationary status or the circumstances under which Plaintiff voluntarily left the cardiology fellowship.

### 3.  What Process was Due?

Even assuming for the sake of argument that Fleming did have a liberty interest in a favorable recommendation for board eligibility, he received all the procedural protections due under the circumstances.  Plaintiff argues that his probation and unfavorable ratings were not academic but disciplinary in nature, requiring a hearing.  Plaintiff also claims that the decisions were arbitrary and capricious, violating his right to substantive due process.

### A.  Academic v. Disciplinary dismissals

No hearing is required to satisfy due process in the case of an academic dismissal.  Mahavongsanan v. Hall, 529 F.2d 448, 449-450 (5th Cir. 1976).  The Supreme Court has stated that university faculties must have the widest range of discretion in making judgments as to the academic performance of students and their entitlement to promotion or graduation.  Board of Curators of the Univ. of Missouri v. Horowitz, 425 U.S. 78, 96 (1978)(Powell, J., concurring).  Evaluation of performance in clinical settings is no less an academic judgment because it involves observation of skills and techniques in actual conditions or practice, than the assigning of grades to written answers of an essay exam.  Horowitz, at 95.

In such an academic setting, the Court has recognized that a hearing may be "useless or harmful in finding out the truth as to

10

scholarship." <u>Horowitz</u>, at 90.   The Court further explained, "Academic dismissals arise from a failure to attain a standard of excellence in studies whereas disciplinary dismissals arise from acts of misconduct." <u>Horowitz</u>, 435 U.S. at 86-87.

Here, the actions in issue are Plaintiff's probationary status and extended academic/training requirements rather than dismissal from the program, but the relevant factors for determining whether the action taken was academic or disciplinary in nature are the same.   Defendants' summary judgment evidence included three letters (signed by all four defendants) giving notice to Fleming (over a one-year period) that his performance in the fellowship program was not satisfactory.   Docket Entry No. 20 (Exhibits 25-27).   Defendants also offered their affidavits which set forth concerns about the progress Plaintiff was making in the cardiology fellowship program. Fleming's affidavit relates his side of various incidents regarding medical care given to patients.   However, it is clear that the disputes between Plaintiff and the Defendants revolve around the clinical care of patients.

Fleming sees significance in the fact that the committee's primary concern was with his attitude and ability to interact with others--doctors, nurses and patients.   Fleming alleges that placing him on probation for those reasons is a disciplinary action. However, in Fleming's own summary judgment evidence he provides "The 1991-1992 Directory of Graduate Medical Education Programs."   In that directory, the essentials for accredited residencies in graduate medical education is spelled out.   A review of this

11

publication reveals that relationships between staff and peers is part of the educational curriculum.

Under Section II "The Curriculum and the Teaching Program", Subsection C, "Other Educational Requirements" starts with subheading "1.  Humanistic Qualities:"

> Physicians must have welfare of their patients as their primary professional concern.  The resident must therefore demonstrate those humanistic qualities which foster the formation of appropriate patient/physician relationships. These include integrity, respect, compassion, professional responsibility, sensitivity to the patient's needs for comfort and encouragement and an appropriate professional attitude and behavior towards colleagues.  These attributes should be emphasized throughout the curriculum and must be evaluated by faculty, peers and others during clinical encounters.

Docket Entry No. 25 (Exhibit 10, p.2713).

The fellowship program in which Plaintiff was enrolled, rated Plaintiff in the areas of "Clinical Judgment," "Medical Knowledge," "Clinical Skills," "Humanistic Qualities," "Professional Attitudes and Behavior" "Medical Care," and "Commitment to Scholarship."  Plaintiff was consistently rated "Unsatisfactory" in "Professional Attitudes and Behavior." Based on the summary judgment evidence, the professional attitude of fellows was a matter of academic concern and review.  The evidence leads the court to conclude that an unsatisfactory rating in this category and the resulting probationary period cannot be considered disciplinary as Plaintiff contends.

Additionally, Fleming argues that <u>Horowitz</u> supports his claim of entitlement to a hearing to determine the accuracy of the factual bases behind the <u>academic</u> decisions of Defendants.  The court

12

disagrees.   In <u>Horowitz</u>, a medical student was dismissed for her failure to meet academic standards, a clinical level of competence and a "critical concern for personal hygiene."   The decision to dismiss the student was made by a faculty committee and approved by the dean.   Students at the medical school were not permitted to appear before the committee on the occasion of the review of their academic performance.

The Supreme Court sidestepped the issue of whether the dismissal deprived the student of a liberty interest in pursuing a medical career, and instead found that even if the Court assumed the existence of the liberty interest, the student received as much due process as the fourteenth amendment required.   The Court found that there was a clear distinction between the process due a student disciplined for misconduct and that required for a student's dismissal for academic reasons.   The former required a hearing before the school's decision making body; the latter did not.   The Court stated:

> "We conclude that considering all relevant factors, including the evaluative nature of the inquiry and the significant and historically supported interest of the school in preserving its present framework for academic evaluations, a hearing is not required by the Due Process Clause of the Fourteenth Amendment.

<u>Id</u>., 435 U.S. at 86.   Significantly, the Court did not disturb the lower court's tacit finding that the lack of personal hygiene was a legitimate academic concern of the faculty.   It appears from <u>Horowitz</u> that the umbrella shielding court review of academic evaluations in the clinical medical context is broad enough to cover those matters which impact all phases of professional development.

13

Clearly, relationships and communications between colleagues, faculty and staff are part of the clinical setting and must be considered academic in the context of a medical fellowship.

Based on the foregoing, the court concludes that <u>Horowitz</u> did not require a hearing at which the student could challenge the factual bases for academic decisions as claimed by Plaintiff.

    B.  <u>Substantive due process</u>

Fleming alleges that Defendants' decision to place him on probation and extend his fellowship was motivated by retaliation or ill will. However, if any rational basis existed for an academic decision, even though there was also evidence of arbitrary action, the court must uphold the academic decision unless that decision was "such a substantial departure from accepted academic norms as to conclusively demonstrate that the person or committee responsible did not actually exercise professional judgment." <u>Regents of the Univ. of Mich. v. Ewing</u>, 474 U.S. 214, 225, 106 S. Ct. 507, 513 (1985); <u>Alanis v. University of Texas Health Science Center</u>, 843 S.W.2d 779, 788 (Tex. App.--Houston [1st Dist.] 1992, writ denied). Where a court has found minimum evidence of professional judgment, such evidence has been considered sufficient to justify judgment against a student as a matter of law. *See* <u>Levi v. University of Texas at San Antonio</u>, 840 F.2d 277, 280 (5th Cir. 1988).

The Defendants in the present dispute have presented ample evidence to prove that their actions in placing Fleming on probation and extending his fellowship by one year were based on rational grounds. *See* Docket Entry No. 20. Fleming's own summary judgment

evidence includes evaluations in which he is rated as 'doubtful' in the area of professional attitude. Docket Entry No. 25. Fleming has presented his affidavit stating his self-serving belief that Defendants' actions were disciplinary and in retaliation for certain of Plaintiff's actions with which Defendants did not agree. However, Fleming provides no facts on which to base his allegation. Fleming, as nonmovant, may not rely on assertions unsupported by the facts to create a fact issue. Hopper v. Frank, 16 F.3d 92, 98 (5th Cir. 1994).

Fleming has not raised a genuine issue of material fact regarding his deprivation of due process claim. Accordingly, Defendants' motion for summary judgment is GRANTED as to the issue of Due Process under the U.S. Constitution.

## IV. State and Individual Immunity from Suit

Fleming names the following four parties as individual defendants in his 42 U.S.C. § 1983 action: James T. Willerson, M.D., Heinrich Taegtmeyer, M.D., Gerald V. Naccarelli, M.D., and Richard W. Smalling M.D., in their official and individual capacities. Plaintiff also names the University of Texas Health Science Center, a state agency, as a defendant.

Because the court has found no constitutional deprivation, the issue of immunity from suit is MOOT. However, as an alternative ground for judgment in favor of the university and the individual Defendants, the court will discuss these issues.

### 1. State Sovereign Immunity

Fleming has named the University of Texas Health Science Center

15

at Houston as a defendant.  However, unless a State has waived its
Eleventh Amendment immunity or Congress has overridden it, a State
cannot be sued directly in its own name regardless of the relief
sought.  Kentucky v. Graham, 473 U.S. 159, 167 n. 14, 105 S. Ct.
3099, 3106 n. 14 (1985).  Suit against a State and its agencies in
federal court is barred by the Eleventh Amendment unless the State
has consented.  Alabama v. Pugh, 438 U.S. 781, 782, 98 S. Ct. 3057
(1978).  The State, not having consented to suit, must be DISMISSED.

     2.  Official Capacity

     It is well-settled that a plaintiff can not recover monetary
damages from a state official sued in his official capacity under 42
U.S.C. § 1983.  Will v. Michigan Dep't of State Police, 491 U.S. 58,
63, 71, 109 S. Ct. 2304, 2308, 2312 (1989) (neither states nor state
officials acting in their official capacities are "persons" within
the meaning of § 1983).  However, a plaintiff may seek prospective
injunctive relief against a state official acting in his official
capacity under 42 U.S.C. § 1983.  Will, 491 U.S. at 71 n. 10, 109 S.
Ct. at 2312 n. 10 (injunctive relief is available under the Ex parte
Young doctrine, one exception to the Eleventh Amendment prohibition
of federal court suits against a state); Harris v. Angelina County,
31 F.3d 331, 337-338 (5th Cir. 1994).

     Fleming cannot maintain his § 1983 claims for monetary damages
against UTHSC or the four individual defendants acting in their
official capacity.  Official immunity would not bar Fleming's
injunctive claim against the four individual defendants acting in

16

CMPDF - www.fastio.com

their official capacity.[3]   However, it is unclear what injunctive
relief Plaintiff seeks in this lawsuit from the individual
defendants because he is no longer in the fellowship program.   It
does not appear to the court that Plaintiff is seeking an order
requiring a hearing on his probationary status or the negative
evaluations of his clinical performance.

### 3.  Individual Capacity

The four individual defendants argue that they are immune from
suit in their individual capacities under a qualified immunity
theory.   As a preliminary matter, a plaintiff must demonstrate
personal involvement by a defendant to maintain suit against the
defendant in his individual capacity.   All four individual
defendants in the present case do not dispute the fact that they
were personally involved in the conduct being questioned.

Fleming must establish two requirements to defeat Defendants'
qualified immunity defense;   1)  Defendants breached a clearly
established constitutional right, Siegert v. Gilley, 500 U.S. 226,
232, 111 S. Ct. 1789, 1793 (1991); and 2) Defendants' actions were
objectively unreasonable as measured by reference to clearly
established law.  Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.
Ct. 2727, 2739 (1982);  Baker v. Putnal, 75 F.3d 190, 198 (5th Cir.
1996).

The first element that Fleming must establish to defeat
Defendants' qualified immunity claim is that Defendants breached a

_____

[3]Based on the court's finding of no constitutional violation,
the issue of injunctive relief is moot.

CMPDF - www.fastio.com

clearly established constitutional right.  When evaluating whether a Plaintiff has established a constitutional violation, courts must look to currently applicable constitutional standards.  <u>Spann v. Rainey</u>, 987 F.2d 1110, 1114 (5th Cir. 1993).

As discussed above, there is no constitutional right to a hearing in an academic dismissal case.  Fleming was not dismissed, but instead put on probation and given extra time to meet the requirements of the fellowship program.  Fleming has failed to raise a genuine issue of material fact regarding the first element necessary to defeat Defendants' qualified immunity claim.

The second element that Fleming must establish to defeat Defendants' qualified immunity claim is that Defendants' actions were objectively unreasonable.  In evaluating a claim of reasonableness for qualified immunity purposes, the defendant's liability turns on the objective reasonableness of the defendant's actions assessed in the light of clearly established law.  <u>Anderson v. Creighton</u>, 483 U.S. 635, 639, 107 S. Ct. 3034, 3038 (1987); <u>Rankin v. Klevenhagen</u>, 5 F.3d 103, 108 (5th Cir. 1993).  The objective reasonableness must be measured with reference to the law as it existed at the time of the conduct in question.  <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 818-819, 102 S. Ct. 2727, 2738 (1982).

At the time (1991) Defendants made their decisions regarding Dr. Fleming there was no existing case law giving a university student a liberty or property right in graduating at a specific time.  Existing law (both currently and in 1991) does not provide a Due Process right to a hearing with regard to an academic dismissal.

18

Existing law both currently and in 1992 (when defendants published information to the Iowa hospitals) does not provide a Due Process right to a 'name clearing' hearing for published information that is not a concrete, false assertion of wrongdoing on the part of the plaintiff. *See* Blackburn v. City of Marshall, 42 F.3d 925, 936 (5th Cir. 1995) *quoting* San Jacinto Sav. & Loan v. Kacal, 928 F.2d 697, 701 (5th Cir. 1991). If the published information was considered a concrete, false assertion of wrongdoing, existing law (both currently and in 1992) required that information to be stigmatizing, not merely adverse. Blackburn, 42 F.3d at 936, *quoting* Wells v. Hico ISD, 736 F.2d 243, 256 n. 16 (5th Cir. 1984) *cert. denied*, 473 U.S. 901, 106 S. Ct. 11 (1985).

Existing law at the time of Defendants' questioned conduct did not recognize a liberty or property right in reputation alone. Paul v. Davis, 424 U.S. 693, 711-712, 96 S. Ct. 1155, 1165 (1976).

Fleming has failed to raise a genuine issue of material fact for either of the elements necessary to defeat Defendants' claim of sovereign and qualified immunity.

V.  Relief under the Texas Constitution

Plaintiff has alleged that his right to due process under the Texas Constitution has been violated by the individual defendants and the University of Texas Health Science Center when he was placed on probation. The Texas Supreme Court has held that the Texas Constitution does not recognize a claim for damages by a private citizen. City of Beaumont v. Bouillion, 896 S.W.2d 143, 147-150 (Tex. 1995). Thus, to the extent that Plaintiff is making a claim

19

for monetary relief under the Texas Constitution, it is DISMISSED.

### VI.   Plaintiff's "False Light" Invasion of Privacy Claim

Texas does not recognize the tort of 'false light' invasion of privacy.  *See* Cain v. Hearst Corp., 878 S.W.2d 577 (Tex. 1994). This claim must be DISMISSED.

### VII.   Breach of Contract

Fleming alleges that Defendants breached their contract to certify him as board eligible after three years in the cardiology fellowship program.   Docket Entry No. 25.   Fleming relies on University of Texas Health Science Center v. Babb to establish that the University handbook is a written contract.  *See* University of Texas Health Science Center v. Babb, 646 S.W.2d 502, 506 (Tex. App.--Houston [1st Dist.] 1982, no writ).  However, the decision in Babb is not persuasive since the same court later decided that the University handbook did not constitute a contract between a University and a student.  *See* Eiland v. Wolf, 764 S.W.2d 827, 837-838 (Tex. App.--Houston [1st Dist.] 1989, writ denied).

While the handbook in Eiland contained disclaimers not found in the handbook in the present dispute, the handbook in the present dispute does not have an express statement that allows a student who begins school under the terms of the catalog to continue through the program under the same catalog, as was the case in Babb.  *See* Babb, 646 S.W.2d 502.  In any event, the handbook at issue in the present dispute states that the fellowship is to last "for a minimum of three years and a maximum of five."  Docket Entry No. 25 (Exhibit 5).   On its face, the handbook does not rise to the level of a

contract guaranteeing that a cardiology student will be certified as board eligible after three years attendance in the program.

Fleming also alleges that he had an 'agreement' with Defendants that the program would last three years. As discussed above, under Texas law, any oral contract that is not to be performed within one year is void under the Statute of Frauds. *See* TEX. BUS. & COMM. CODE § 26.01(b)(6) (Vernon 1995); <u>Farrington v. Sysco Food Services</u>, 865 S.W.2d 247, 253 (Tex. App.--Houston [1st Dist.] 1993, writ denied). Such an oral promise would fail under the Statute of Frauds.

Fleming has failed to raise a genuine issue of material fact concerning his breach of contract claim.

VIII.  <u>Tortious Interference with Contract</u>

1.  <u>Existing Contract</u>

The elements of a cause of action in Texas for tortiously interfering with an existing contract are: 1) the existence of a contract subject to interference; 2) a willful and intentional act of interference; 3) such act was a proximate cause of damage; and 4) actual damage or loss occurred. <u>Browning-Ferris Inc. v. Reyna</u>, 865 S.W.2d 925, 926 (Tex. 1993).

In the present dispute, Fleming has alleged in his complaint that his contractual relationship with Medical Associates of Cedar Rapids was destroyed by Defendants' negative evaluations. Docket Entry No. 1. However, Fleming has presented no evidence to establish that a contractual relationship existed with Medical Associates.

21

If Fleming had a contractual relationship with Medical Associates, it would be necessary to show that Defendants intentionally acted to interfere with that contract. *See* Southwestern Bell Telephone Co. v. John Carlo Texas, Inc., 843 S.W.2d 470, 472 (Tex. 1993). "[K]nowing inducement" or other intentional interference is required to establish a cause of action in Texas for tortious interference. Browning-Ferris, 865 S.W.2d at 927. Intentional interference does not require intent to injure, only that "the actor desires to cause the consequences of his act, or that he believes that the consequences are substantially certain to result from it." Southwestern Bell Telephone Co. v. John Carlo Texas, Inc., 843 S.W.2d 470, 472 (Tex. 1993).

In his summary judgment evidence, Fleming relies on a minor discrepancy in the evaluations forms to reach his conclusion that Defendants must have known that the performance ratings they supplied to the Iowa hospitals were false. Fleming provides no summary judgment evidence to show that Defendants desired to cause interference with a contract, or that Defendants believed that interference was substantially certain to result from Defendants' actions. Fleming fails to raise a genuine issue of material fact regarding his tortious interference with an existing contract claim.

2. Prospective Contract

The elements of a cause of action in Texas for tortiously interfering with a prospective contract are: 1) a reasonable probability that the parties would have entered into a contractual relationship; 2) an intentional and malicious act by the defendant

22

that prevented the relationship from occurring, with the purpose of harming the plaintiff; 3) the defendant lacked privilege or justification to do the act; and 4) actual harm or damage resulted from the defendant's interference. Thrift v. Hubbard, 44 F.3d 348, 356-357 (5th Cir. 1995).

In the present dispute, Fleming has raised an issue regarding a reasonable probability that he would have entered into a contractual relationship with St. Luke's Hospital but for the negative evaluations, however, as discussed below, Plaintiff cannot satisfy the remaining prongs of the Thrift test.

Fleming alleges that the Defendants acted intentionally and maliciously in communicating his performance evaluation to the Iowa hospitals. However, the only summary judgment evidence supporting this allegation is a minor discrepancy in rating forms which is discussed in greater detail in Section X, §1, Actual Malice. The rating forms relied on by Fleming are clearly insufficient to raise a genuine issue of material fact regarding the intent and malice of the Defendants.

Fleming has introduced no evidence to establish that Defendants communicated his performance ratings to the Iowa hospitals for the purpose of harming him.

Defendants enjoy a qualified privilege to communicate Fleming's academic records and performance ratings to the Iowa hospitals and the Board of Internal Medicine. See Defamation, infra, § X.

Fleming's claim for tortious interference with a prospective contract cannot succeed because he has failed to raise a genuine

23

issue of material fact as to two essential elements.

IX.   <u>Fraud</u>

To prevail on a claim for fraud, Fleming must establish that: 1) a material representation was made;  2)  the representation was false;  3)  at the time the speaker made the representation he knew it was false when made or was reckless about the truth of the matter asserted;  4)  the statement was made with the intent that it should be acted upon by the other party;  and  5)  the other party acted in reliance upon it and thereby suffered injury.  <u>Gillum v. Republic Health Corp.</u>, 778 S.W.2d 558, 571 (Tex. App.--Dallas 1989, no writ).

Where the alleged fraud is based on a promise to perform in the future (as in the present dispute), in addition to the above elements, Fleming must prove facts that the promise was made with a present intent not to perform. *See* <u>Id.</u> *citing* <u>New Process Steel Corp. v. Steel Corp. of Texas</u>, 703 S.W.2d 209, 214 (Tex. App.--Houston [1st Dist.] 1985, writ ref'd n.r.e.).

Assuming, arguendo, that Defendants did promise to graduate Fleming in three years, he has failed to allege or prove that Defendants had a present intent not to perform at the time the promise was made.  In fact, Fleming's own summary judgment evidence states that he completed the first year without incident.  Docket Entry No. 25.  Mere breach of an agreement is not enough in itself to establish that the speaker made the promise with no intention of fulfilling it.  <u>Gillum</u>, 778 S.W.2d at 571;  <u>New Process Steel Corp.</u>, 703 S.W.2d at 214.  Fleming has failed to raise a genuine issue of material fact for an essential element of his fraud claim.

24

X.  Defamation, Libel, and Slander

The Texas Supreme Court has adopted the "defamation" standard set out in New York Times Co. V. Sullivan, 376 U.S. 254 (1964). Casso v. Brand, 776 S.W.2d 551, 557 (1989).  In order to prevail on a defamation claim, the plaintiff must show that the defendant made a false and defamatory statement of fact without knowledge that it was false or with reckless disregard of whether it was false.  Casso v. Brand, 776 S.W.2d at 558.

Assertions of opinion are protected by the first amendment of the U.S. Constitution and article 1, section 8 of the Texas Constitution.  See Gertz v. Robert Welch, Inc., 418 U.S. 323, 339-40 (1974); O'Quinn v. State Bar, 763 S.W.2d 397, 402 (Tex. 1988).  The dispute in this action concerns the evaluations of Plaintiff's performance made by Defendants and communicated to hospitals and an accrediting board.  This information appears to be a communication of an opinion, not an assertion of fact.  Under the common law, there exists a qualified privilege for opinions in the form of fair comment.  The privilege is qualified because after it is established by the defendant, it may be defeated by a showing of actual malice by the plaintiff.  Casso v. Brand, 776 S.W.2d at 560-61.

1.  Qualified Privilege

Under Texas law, "a communication on a subject in which the author or the public has an interest, or with respect to which the author has a duty to perform to another owing a corresponding duty, may constitute a qualified or conditional privilege."  Marathon Oil Co. v. Salazar, 682 S.W.2d 624, 630 (Tex. App.--Houston [1st Dist.]

25

1984, writ ref'd n.r.e.).  References and accusations made by an employer about an employee to one with a common interest clearly come within this doctrine.  <u>Duffy v. Leading Edge Products</u>, 44 F.3d 308, 312 (5th Cir. 1995).  The court concludes that Defendants in the action enjoyed a qualified privilege for their communication to the Iowa hospitals and the American Board of Internal Medicine.

### 2.  Actual Malice

Actual malice is required to defeat the qualified privilege.  <u>Duffy</u>, 44 F.3d at 313.  Federal procedural rules require the entry of summary judgment against the nonmoving party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).  Texas law places the burden of proof of malice at trial on the plaintiff.  <u>Dun and Bradstreet, Inc. v. O'Neill</u>, 456 S.W.2d 896, 898 (Tex. 1970).  Therefore, Fleming must prove malice to defeat summary judgment, rather than Defendants having to prove lack of malice.  *See* <u>Duffy</u>, 44 F.3d at 314.

Actual malice is "[T]he making of a statement with the knowledge that it is false, or with reckless disregard of whether it is true.  'Reckless disregard' is defined as a high degree of awareness of probably falsity, for proof of which the plaintiff must present 'sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.'  An error in judgment is not enough."  <u>Carr v. Brasher</u>, 776 S.W.2d 567, 571 (Tex. 1989).  This is a higher standard

26

than common law malice;  only clear and convincing affirmative proof will support recovery.  <u>Howell v. Hecht</u>, 821 S.W.2d 627, 630 (Tex. App.--Dallas 1991, writ denied).

In the present dispute Fleming presents performance ratings given by Defendants to the Iowa hospitals and the American Board of Internal Medicine.  Fleming alleges that Defendants knew that the performance ratings supplied to the Iowa hospitals were false because Defendants rated Fleming's clinical judgment as "satisfactory" on the Board of Internal Medicine form, yet had rated Fleming's professional judgment as "unsatisfactory" to the Iowa hospitals.  Docket Entry No. 25.

A careful examination of the forms shows that Defendants reported to the Board of Internal Medicine that Fleming was "unsatisfactory" in the areas of "moral and ethical behavior in the clinical setting," "overall clinical competence as a consultant in cardiovascular disease," and "professional behaviors and attitudes." <i>See</i> Docket Entry No. 25, Exhibit 6.

Of the seven areas rated on the Board of Internal Medicine form, only one differs from the rating given to the Iowa hospitals. Docket Entry No. 25, Exhibits 4, 8.  The one area in which Defendants rated Fleming "satisfactory" in to the Board of Internal Medicine but not to the Iowa hospitals was "clinical judgment."

A different evaluation of one component, when the rating for overall clinical competence was the same, falls far short of the clear and convincing proof required to prove actual malice.  The "unsatisfactory" ratings outlined above, especially the

27

"unsatisfactory" in "overall clinical competence" made on a different form at a later time is not so different from an "unsatisfactory" in "clinical judgment" as to raise an issue of fact to defeat the claim of qualified privilege.

In any case, truth is an absolute defense to defamation. *See* Duffy, 44 F.3d at 312. Fleming does not deny that he was placed on probation and did not complete the fourth year of training required by Defendants. The only communication that Fleming has not acknowledged as true is the performance ratings supplied by Defendants to the Iowa hospitals and the Board of Internal Medicine. These communications are privileged, as discussed above. Plaintiff's claim for defamation must fail as a matter of law.

## XI. Intentional Infliction of Emotional Distress

Texas law requires the following four elements to establish a claim for intentional infliction of emotional distress: 1) The defendant acted intentionally or recklessly; 2) The conduct was extreme and outrageous; 3) The actions of the defendant caused the plaintiff emotional distress; and 4) The emotional distress suffered by the plaintiff was severe. Twyman v. Twyman, 855 S.W.2d 619, 621 (Tex. 1993).

Liability for outrageous conduct should be found "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Id. Generally, the case is one in which a recitation of the facts to an average member of the community would lead him to

28

exclaim 'outrageous.' <u>Dean v. Ford Motor Credit Co.</u>, 885 F.2d 300, 306 (5th Cir. 1989).

Defendants have not disputed that their actions in placing Fleming on probation, requiring him to take an additional year of training, and publishing his performance ratings to the Iowa hospitals were all intentional. However, such conduct fails to satisfy the requirements of 'atrocious,' 'utterly intolerable in a civilized community,' and 'beyond all possible bounds of decency' as required by the case law. See <u>Twyman</u>, 855 S.W.2d at 621.

To establish a claim of intentional infliction of emotional distress, courts have required conduct much more outrageous than that of the Defendants in this dispute. *See* <u>Dean v. Ford Motor Credit Co.</u>, 885 F.2d 300, (5th Cir. 1989) (employer planting checks in employee's purse to imply theft); <u>Tidelands Automobile Club v. Walters</u>, 699 S.W.2d 939 (Tex. App.--Beaumont 1985, writ ref'd, n.r.e.)(insurance company falsely telling spouse that deceased spouse had been intoxicated at time of fatal accident when deceased spouse was religious non-drinker).

Additionally, Fleming's affidavit and other probative summary judgment evidence are totally devoid of any evidence showing that Defendants' conduct caused him emotional distress, the second prong of the cause of action. For emotional distress to be extreme enough to satisfy the legal requirements of this cause of action, it must be "so severe that not [sic] reasonable man could be expected to endure it without undergoing unreasonable suffering". <u>Tidelands Automobile Club v. Walters</u>, 699 S.W.2d 939, 941, 945 (Tex. App.--

29

Beaumont 1985, writ ref'd n.r.e.).  Fleming has failed to present
evidence showing that he has suffered severe emotional distress.
This cause of action must be DISMISSED.

## XII.  Breach of Fiduciary Duty

Fleming alleges that Defendants breached their fiduciary duty
to him.  To breach a fiduciary duty, that duty must exist.  "A
fiduciary duty is an extraordinary one and will not lightly be
created."  Gillum v Republic Health Corp., 778 S.W.2d 558, 567 (Tex.
App.--Dallas 1989, no writ).  Under Texas law, mere subjective trust
alone does not create a fiduciary relationship.  Thigpen v. Locke,
363 S.W.2d 247, 253 (Tex. 1962).  Therefore, Fleming's assertion
that he initially trusted Defendants and relied on their statements
is insufficient to establish a fiduciary relationship between
Fleming and Defendants.  See Id.  Fleming has produced no probative
evidence to establish the existence of a fiduciary relationship
between himself and Defendants.

The lack of a fiduciary relationship is further underlined by
the fact that Fleming hired an attorney to represent him in his
dealings with Defendants after his probation was extended.  Docket
Entry No. 25 (Fleming affidavit).  Hiring an attorney to represent
him is inconsistent with the theory of Defendants being in a
fiduciary relationship with him subsequent to the hiring of the
attorney.

Fleming has failed to raise a genuine issue of material fact
regarding the existence of a fiduciary duty owed by Defendants.
This cause of action must be DISMISSED.

30

## XIII.  Conspiracy

Fleming has alleged that Defendants engaged in a conspiracy against him.  A civil conspiracy is a combination by two or more persons to accomplish an unlawful purpose, or to accomplish a lawful purpose by unlawful means.  Massey v. Armco Steel Co., 652 S.W.2d 932, 934 (Tex. 1983).  "[A]s a matter of law, a corporation or other company cannot conspire with itself, no matter how many of its agents participate in the complained-of action."  Wilhite v. H.E. Butt Co., 812 S.W.2d 1, 5 (Tex. App.--Corpus Christi 1991, no writ); see Bayou Terrace Investment Corp. v. Lyles, 881 S.W.2d 810, 815 (Tex. App.--Houston [1st Dist.] 1994, no writ).

Fleming argues that because Defendants acted out of personal animus instead of in furtherance of the agency, a conspiracy can exist.  Docket Entry No. 29.  Fleming has presented no evidence beyond the conclusory allegations in his affidavit to show that Defendants acted in any manner other than the furtherance of University business.  Fleming has failed to raise a genuine issue of material fact regarding his claim of conspiracy.

## XIV.  Invasion of Privacy

The Texas cause of action for invasion of privacy that most closely fits the facts in the present dispute is the public disclosure of embarrassing private facts about the plaintiff.  See Industrial Foundation of the South v. Texas Industrial Accident Board, 540 S.W.2d 668, 682 (Tex. 1976) cert. denied 430 U.S. 931, 97 S. Ct. 1550 (1977).  In order to recover for public disclosure of private facts about him, Fleming must show:  1) that publicity was

31

given to matters concerning his private life; 2) the publication of which would be highly offensive to a reasonable person of ordinary sensibilities; and 3) that the matter publicized was not of legitimate public concern. Id.

The first element that Fleming must establish is that publicity was given to matters concerning his private life. Defendants acknowledge that they communicated Fleming's performance rating and failure to complete the cardiology program to the Iowa hospitals and the American Board of Internal Medicine. However, it is generally agreed that the 'publicity' requirement for invasion of privacy is not met by publication to one other person, as is the publication requirement for defamation. Industrial Foundation, 540 S.W.2d at 683. To establish a claim for invasion of privacy, "publicity requires communication to more than a small group of persons; the matter must be communicated to the public at large, such that the matter becomes one of public knowledge." Industrial Foundation, 540 S.W.2d at 683-684. In the present dispute, Fleming has not presented evidence to show that Defendants communicated the information at issue to the public at large, or made the matter one of public knowledge. Fleming has failed to raise a genuine issue of material fact concerning an essential element of his invasion of privacy claim.

In any event, Defendants have a qualified privilege to communicate the information to the Iowa hospitals and the American Board of Internal Medicine. See Defamation, supra, § X.

32

## XV.   Freedom of Speech

In his Response to Defendants' Motion for Summary Judgment, Fleming alleges a violation of his freedom of speech under the U.S. and Texas Constitutions.   Docket Entry No. 25.   The issue of Fleming's freedom of speech is not properly before this Court because a claim for violation of Fleming's freedom of speech was not included in the original complaint or any subsequent complaint. Defendants have objected to Fleming's alleging a violation of his freedom of speech for the first time in his response to the summary judgment motion without first filing an amended complaint.

The court agrees.   Fleming's allegation is untimely and cannot be raised in a response to Defendants' motion for summary judgment.

## XVI.   Deposition Evidence

Defendants' counsel failed to verify the deposition excerpts submitted with their Motion for Summary Judgment. *See* FED. R. CIV. P. 56.   Although this is a housekeeping matter, the summary judgment evidence must be in a proper form in order that the court may properly consider it.   Accordingly, this Court ORDERS Defendants' counsel to supplement the record by filing verification of the deposition excerpts within ten (10) days of receipt of this Memorandum and Order.

33

## XVII.  Conclusion

For the foregoing reasons, it is HEREBY ORDERED that Defendants' Motion for Summary Judgment (Docket Entry No. 20) be GRANTED.

The Clerk shall send copies of this Memorandum and Order to the parties.

SIGNED at Houston, Texas, this 19th day of April, 1996.

NANCY K. JOHNSON
UNITED STATES MAGISTRATE JUDGE

34